WAYLAND CREAMERY CO. v. DEAN.

1. EASEMENTS—DRAINS—CESSPOOL—NUISANCE.
    Clauses contained in a deed of land to complainant giving the right to construct sewers and drains required to carry off waste product from complainant's creamery and to enter upon defendant's land for such purpose and to keep the same in repair, construed with a subsequent quitclaim deed granting to complainant the right to construct "cisterns, reservoirs, cesspools or any other receptacle, above or below the ground for the purpose of storing and disposing of all whey, refuse, waste materials," etc., do not authorize the discharge of refuse on the surface of the ground, creating a menace to health and a public nuisance.

2. PLEADING—EQUITY—CROSS-BILL.
    Defendant's cross-bill, specifically praying only for relief to which he was not entitled under the evidence, should have been dismissed without granting an injunction.

Appeal from Allegan; Padgham, J. Submitted January 30, 1912. (Docket No. 137.) Decided March 12, 1912.

Bill by the Wayland Creamery Company against Calvin Dean for an injunction and the construction of certain deeds granting complainant rights of easement. From a decree for defendant granting relief upon his cross-bill, complainant appeals. Modified and affirmed.

*Smedley, Linsey & Lillie*, for complainant.

*John B. Stockdale* (*Chas. Thew*, of counsel), for defendant.

BLAIR, J. On the 29th day of March, 1899, Joseph Burlingame (being the owner of the N. E. ¼ of section 6, Wayland township, Allegan county), and Laura, his wife, conveyed to complainant by warranty deed—

"All that certain piece or parcel of land situate and being in the village of Wayland, county of Allegan, and State of Michigan, and described as follows, to wit: Commencing at a point in the center of Elm street, forty (40) rods west of the center of North Main street, said village and township of Wayland. Running thence north ten (10) rods, thence west ten (10) rods, thence south ten (10) rods, thence east ten (10) rods, to the place of beginning, containing in all one hundred (100) square rods of land, and being a portion of the northeast quarter (N. E. ¼) of section six (6), in township three (3) north, range eleven (11) west, in said county and State. And said second party has a right, said right being hereby given, to make and construct any and all drains and sewers that said second party may deem necessary for the proper drainage of said creamery, and for the purpose of keeping said creamery clean, and carrying off any and all refuse or waste material in and about running their said creamery. And may and shall have the right to enter upon any lands now owned by said first parties on said northeast quarter (N. E. ¼) of said section six (6) aforesaid, at any time or times said second party may so desire, to construct or build said drain or sewer, and for the purpose of keeping the same in repair."

On the 29th day of June, 1900, the Burlingames granted to complainant by quitclaim deed—

"The right to construct cisterns, reservoirs, cesspools, or any other receptacle, above or below the ground, for the purpose of storing and disposing of all whey, refuse, waste material and washings from their said creamery, upon any and all lands owned or occupied by said first parties, on the northeast quarter of section six (6), in township three (3) north, range eleven (11) west. And shall have the right to go upon any part of said premises, at any time, to repair or build anew, for the purposes aforesaid."

In the winter of 1907, the Burlingames conveyed to the defendant Dean by warranty deed 80 acres of said N. E. ¼ of section 6 adjoining the creamery property and upon which there was at that time a creamery drain. The creamery plant was constructed in 1899 on the land purchased of Burlingame, and a tile drain was constructed from the creamery to a low place on the lands afterwards purchased by defendant, some five rods from the creamery property. Some two or three years afterwards, a cesspool was put in, with which the drain was connected. This cesspool was not a success, but filled up, and the contents of the drain were discharged upon the surface of the ground. The tile was some three feet underground at the creamery, but came to the surface where it discharged into the cesspool. Defendant and others, prior to 1909 and afterwards, complained of the stench coming from the decaying matter deposited upon the surface of the ground. In the summer of 1909, defendant forbade complainant's employés coming on his land to deposit lime on the refuse, claiming that it endangered his stock. In July, 1910, defendant dug up the tile on his land and took them out. In the same month, defendant and his wife conveyed to complainant a strip of land two rods wide, upon which complainant, under the advice of the State board of health, constructed a septic tank and cesspool, which did not, however, meet the difficulty, and in August, 1910,

169 MICH.—15.

complainant filed its bill of complaint for a construction of its rights under its deeds and to restrain defendant from interfering with its replacing the tile and discharging the refuse as theretofore.

Defendant answered, denying the right of complainant to discharge its refuse—

"Upon the open field and not into any cesspool or structure, either under or above the ground, for the reception of the drainage from the said creamery, thereby causing great nuisance and endangering public health as well as the health and convenience of the occupants and owners of said land."

He further alleged that the drain as operated was a public and private nuisance and claimed the benefit of a cross-bill. The circuit judge, in his opinion for a decree, said:

"I am fully satisfied by the proofs in the cause that the act of complainant in discharging its refuse from the creamery upon the open ground in such close proximity to dwellings and the homes of people in the village, and especially the dwelling of defendant, created, became, and was a nuisance, both public and private, and should be abated; that if the said drain is continued, either on defendant's land, or on the land of complainant's two-rod strip, the refuse from said creamery must not be left on the open ground, but must be conducted to cisterns, reservoirs, cesspools, or other receptacles, above or below the ground, in such way that it shall not be a menace to public health. I am of the opinion that, at the time complained of by the complainant, the acts of the defendant were justified in abating a nuisance, where no breach of the peace was committed, and no claim is made that there was any such breach of the peace."

A decree was entered, dismissing the bill of complaint—

"And that the relief prayed for in the cross-bill of the defendant be granted; that the said complainant be and hereby is forever restrained from discharging its refuse from its creamery upon the open ground belonging to said defendant; that if any refuse is drained upon the grounds of said defendant, it must be conducted through

cisterns, reservoirs, cesspools, or other receptacles, in such a way that it shall not be a menace to the public health."

From this decree complainant appeals to this court.

We are of the opinion that, construing the two deeds together, they did not authorize complainant to discharge its refuse upon the surface of the ground, but only in cisterns, reservoirs, cesspools, or other receptacles. The bill of complaint was therefore properly dismissed.

The cross-bill should also have been dismissed. The only specific relief prayed for therein was specific performance of an alleged contract to release to defendant, in part consideration of the conveyance of the two-rod strip, the right to construct the drains, etc. Defendant's proofs failed to establish such an agreement.

As modified by this opinion, the decree is affirmed, without costs to either party.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.